The State v. Emert.

THE STATE v. EMERT, *Appellant.*

DIVISION TWO.

1. **Peddler, Who is: STATUTE.** One who goes from place to place in this state for the purpose of offering for sale and who sells sewing machines manufactured in another state and the property of a citizen of the latter state, is a peddler within the meaning of Revised Statutes, section 7211.

2. ———: SALE OF ARTICLES MANUFACTURED IN ANOTHER STATE: LICENSE : PENALTY. A peddler who sells in this state articles manufactured and owned by a resident of another state must procure the license required by law (R. S. 1889, sec. 7212), and failure to do so will render him liable to the penalty imposed by the statute. (R. S. 1889, sec. 7218.)

3. ———: ———: ———: ———. The statutes of this state defining who are peddlers, prohibiting them from dealing as such, without license and prescribing penalties therefor, make no distinction between articles manufactured and owned by residents of other states and those manufactured and owned by residents of this state, and are not in conflict with section 1 of article 8 of the constitution of the United States delegating to congress the sole power to regulate commerce among the states.

*Appeal from Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*Seneca N. Taylor* for appellant.

(1) The so-called peddler's law, so far as it applies to the selling of the machine in question, is a regulation of commerce among the states, and violates the provisions of the constitution of the United States, which grants to congress the power to make such regulations. "Interstate commerce cannot be taxed at all by a state, even though the same amount of tax should be levied on domestic commerce, or that which is carried on solely within the state. *Robbins v. Taxing District,* 120 U. S. 489; *County of Mobile v. Kimball,* 102 U. S. 691; *Leisy v. Hardin,* 135 U. S. 100. This power vested in congress, "to regulate commerce with foreign nations, and with the Indian tribes, is the power to prescribe the rule by which that commerce is to be governed, and is a power complete in itself, acknowledging no limitation other than those prescribed in the constitution. It is coextensive with the subject upon which it acts, and cannot be stopped at the external boundary of the state, but must enter its interior and must be capable of authorizing the disposition of those articles which it introduces, so that they may become mingled with the common mass of property within the territory entered." *Gibbons v. Ogden,* 9 Wheat. 1; *Brown v. Maryland,* 12 Wheat. 419; *Leisy v. Hardin,* 135 U. S. 108. (2) The taxation in question does not come within the police power of the state. *Henderson v. Mayer,* 92 U. S. 259; *Railroad v. Husen,* 95 U. S. 465; *Walling v. Michigan,* 116 U. S. 466; *Robbins v. Taxing District,* 120 U. S. 489. (3) The taxation in question is an impost on imports, and, therefore, obnoxious to article 1, section 10, of the constitution of the United States.

*John M. Wood*, Attorney General, for the State.

As the statute, as amended, does not discriminate against goods which are not the product of this state, it is not liable to the objection which prevailed against the former statute, and its provisions may be enforced. *Welton v. State*, 91 U. S. 275 ; *Robbins v. Taxing District*, 120 U. S. 489 ; *Machine Co. v. Gage*, 100 U. S. 676 ; *Ward v. Maryland*, 20 U. S. [ Law Ed.] 449 ; *Woodruff v. Parham*, 19 U. S. [ Law Ed.] 383.

MACFARLANE, J.—Plaintiff was prosecuted upon information before a justice of the peace, for following the business of a peddler without having a license therefor. The case was appealed to the circuit court of Montgomery county, where it was tried, defendant found guilty and a fine of $50 imposed upon him. From the judgment he has appealed to this court, on the ground that a constitutional question is involved.

The case was submitted to the court upon the following agreed statement of facts :

"For the purpose of dispensing with evidence in the above-entitled cause, in the circuit court, it is agreed, by and between the parties to said cause, that the following are the facts in said case, and that said cause may be decided by the court on the following agreed statement, to-wit:

"*First.* That, for more than five years last past, the Singer Manufacturing Company has been, and still is, a corporation, duly organized under the laws of the state of New Jersey, and a citizen of that state.

"*Second.* That on and prior to the twenty-sixth day of June, 1889, E. S. Emert, defendant, was in the employ of said Singer Manufacturing Company on a salary for his services, and at said time, in pursuance of said employment, was engaged in going from place to place in said Montgomery county, Missouri, with a horse and wagon, soliciting orders for the sale of Singer

sewing machines, having with him in said wagon a certain new Singer sewing machine, which, on said day, he offered for sale to various persons, at different places in said county, and on said day the defendant did find a purchaser for said machine, and did sell and deliver the same to David Portuchek, in said county.

" *Third.* That said Singer machine, in question, was manufactured by said Singer Manufacturing Company at its works in the state of New Jersey, and that said machine belonged to and was the property of said company, and that it was forwarded to this state by said company and delivered to defendant as its agent, for sale on its account, and said machine was sold on account of the said manufacturing company ; that said machine was of the value of $50, and the defendant at the time of said sale had no peddler's license."

The statute under which defendant was convicted is as follows : " Sec. 7211. Whoever shall deal in the selling of patents, patent rights, patent or other medicines, lightning rods, goods, wares or merchandise, except books, charts, maps and stationery, by going from place to place, to sell the same, is declared to be a peddler.

" Sec. 7212. No person shall deal as a peddler without a license ; and no two or more persons shall deal under the same license, either as partners, agents or otherwise ; and no peddler shall sell wines or spirituous liquors."

Section 7217 fixes the license fee to be paid for peddling with horse and buggy at $20 for six months, for the use of the state.

Section 7218 fixes a penalty of $50 for dealing as a peddler with horse and wagon without license.

Defendant insists that this statute, as applied to him, under the statement of facts agreed to, is obnoxious to that provision of the federal constitution ( sec. 1, art. 8) which delegates to congress the sole power to regulate commerce among the states.

This subject has, of late years, received much discussion and consideration from the courts of the country, both state and federal, and many of the questions involved have been firmly established. It is conceded by all, that a law of a state which imposes a tax upon articles · manufactured in, or imported from, another state, as a condition of the right to sell and dispose of them, would be in violation of this provision of the constitution. The difficulty, in each case, has been to determine the effect of the particular law under consideration. To determine whether in that case the commercial power of the federal government had ceased and the power of the state had commenced. Solving these questions as they arose, it has been settled that it matters not whether the tax is imposed directly upon the commodity sold, or by way of license exacted of the persons who make the sales, the restriction on commerce would be the same in either case. *Welton v. State*, 91 U. S. 275 ; *Robbins v. Taxing District*, 120 U. S. 489.

By force of these decisions of the court having the highest judicial authority over the subject, it is settled, that the sale of goods which are in another state at the time of the sale, for the purpose of introducing them into the state in which the regulation is made, is interstate commerce ; that a tax on a sale of such goods, before they are brought into the state, is a tax on interstate commerce itself ; that the imposition of a license tax upon the person making such sale is, in its effect, a tax upon the goods themselves ; that a state cannot tax goods beyond its jurisdiction. *Hynes v. Briggs*, 41 Fed. Rep. 469, citing *Robbins v. Taxing District, supra; Brown v. Houston*, 114 U. S. 622 ; *Woodruff v. Parham*, 8 Wall. 123 ; *Cook v. Pennsylvania*, 97 U. S. 566 ; *Welton v. State, supra.*

It has been equally well settled that as soon as goods are brought into a state, and have become a part of its general mass of property, they become taxable in the same manner as other similar property in the state.

*Brown v. Maryland*, 12 Wheat. 419 ; *Brown v. Houston, supra ; Machine Co. v. Gage*, 100 U. S. 676.   The question of most difficulty is, to determine in individual cases, whether the property brought into one state from another has become a part of the general mass of the property of such state.   The only rule yet laid down is, that so long as it remains in the original package in which it was brought into the state, it is beyond the control of the state laws attempting to restrict or prohibit its sale.   *Leisy v. Hardin* 135 U. S., 100.   The rule is more elaborately stated by Chief Justice MARSHALL in *Brown v. Maryland, supra*, who, after suggesting the difficulties that might arise in distinguishing between what would be laying a duty on imports and what would be the acknowledged power of states to tax persons and property within their territory, says : "Yet the distinction exists and must be marked as the cases arise.   Till they do arise, it might be premature to state any rule as being universal in its application.   It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported that it has become incorporated and mixed up with the mass of property of the country it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the state ; but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports to escape the prohibition of the constitution."

The right of the state to require a license tax on certain avocations, and among them that of a peddler. is not questioned in this case, and has been recognized by the supreme court of the United States in many of the cases bearing on this question.   *Machine Co. v. Gage, supra*.   Whoever shall deal in selling goods, wares and merchandise, by going from place to place to sell the same, is declared to be a peddler by the statute.   Sec. 7211.

Applying these principles to the facts in this case, what is the logical conclusion? Defendant was engaged in going from place to place selling and trying to sell sewing machines in Montgomery county in this state, and had been so engaged for some years. He carried the machines with him, in a wagon, and on making a sale delivered those sold to the purchaser. He was not only soliciting orders but was making sales and delivering the property sold. These acts bring him clearly within the statutory definition of a peddler, and, having no license from the state, he became liable to the penalties imposed by the statute, unless, for any reason, he was exempt from the operations of the law. This exemption is claimed on the ground that he was selling the machines as agent for the Singer Manufacturing Company, a corporation under the laws of the state of New Jersey, and a citizen of that state.

It will be observed that the statute now makes no discrimination between the sale of the products of this and any other state, as was the case in *Welton v. State, supra,* and when the defendant was engaged in selling these machines the commercial power of the federal government did not extend over them on account of any discriminating legislation of the state by reason of their foreign character. The only question, then, is whether this property, in the sale of which defendant was engaged, had lost its distinctive character as an import and become subject to the taxing power of the state, or whether it continued under the protecting power of the federal government until sold and transferred.

The difficulty suggested by Chief Justice MARSHALL, of drawing the line of distinction between the restriction upon the power of the state imposed by the constitution and the acknowledged power of the state to tax persons and property, meets us here. After careful consideration of the decided cases and the principle involved, we have come to the conclusion that as soon as

the defendant, as agent for the foreign manufacturer, undertook to sell a machine in the manner and by the means adopted by him, it came within the taxing power of the state, and a sale thereof, without a license, made him amenable to the penalties of the law. The justice of this conclusion is manifest. The law places no restrictions or barriers on the commerce of citizens of other states ; it imposes no burdens that are not borne equally by citizens of this state. The burdens of taxation are imposed and endured as a recompense for the protection the law affords to person and property, and that protection is thrown around all alike, the resident citizen, and the citizen of other states.

The non-resident manufacturer and merchant voluntarily places his property under the protection of the laws of this state. Can it be unjust to require of him the same tribute that is required of his resident competitor in business? The framers of the constitution could never have intended to discriminate against any state, or the citizens thereof. Indeed, it is universally conceded and contended that this commerce clause of the constitution was designed to prevent discriminations and to encourage and foster free and unrestricted trade among the several states. All that can reasonably be required is, to accord to the non-resident rights equal to, but not above, those of the citizens ; that, with respect to commerce, state lines be obliterated and the citizens of the union stand upon the same footing, and have equal opportunities in their contests for trade and business.

We think the conclusion reached entirely consistent with the decisions of the supreme court of the United States, and directly borne out by some of them. The case of *Machine Co. v. Gage, supra*, we consider directly in point. The code of Tennessee provided that all peddlers of sewing machines, and selling by sample, should pay a tax of $10. The agent of the Home Machine Company, a corporation of Connecticut, was

required to take out license before he was permitted to peddle machines. The company sued to recover back the license fee, on the ground that the law was not valid as applied to one engaged in the sale of goods manufactured in another state. Plaintiff was defeated in the highest state court, and the judgment was affirmed on appeal to the United States supreme court. See, also, *Waring v. The Mayor*, 8 Wall. 110 ; *Woodruff v. Parham, supra.*

In the dissenting opinion of WAITE, C. J., in case of *Robbins v. Taxing District, supra*, he says : "I am unable to see any difference, in principle, between a tax on a seller by sample and a tax on a peddler, and, yet, I can hardly believe it would be contended that the provision of the same statute, now in question, which fixes a license fee, for all peddlers, in the district, would be held to be unconstitutional in its application to peddlers who came with their goods from another state, and expected to go back again." United States Circuit Judge CALDWELL of this circuit takes the same position in a case recently decided by him, in which he holds, that a foreign corporation, selling ranges, which have been previously shipped into the state, and there stored, cannot avoid the payment of the license required of stove-range agents under the laws of Arkansas, on the ground that it is engaged in interstate commerce. The effect of the decision in that case was that as soon as the ranges were stored for sale they became subject to the taxing powers of the state. *Hynes v. Briggs, supra* ; see, also, *Ex parte Butin*, 28 Tex. App. 304 ; *State v. Richards*, 32 W. Va. 348.

That the constitution only requires, and was only intended to enforce, free interchange of commodities between citizens of different states, without regard to state lines, and that citizens of one state should have the right to sell their products in any other state, without prejudice, or discrimination, we think clearly declared in *Woodruff v. Parham, supra ; Hinson v.*

*Lott*, 8 Wall. 150 ; *Paul v. Virginia*, 8 Wall. 168 and many other cases. In *Hinson v. Lott*, Mr. Justice MILLER, for the court, in conclusion, says : " As the effect of the act is such as we have described, and it institutes no legislation, which discriminates against the products of sister states, but merely subjects them to the same rate of taxation which similar articles pay, that are manufactured within the state, we do not see in it an attempt to regulate commerce, but an appropriate and legitimate exercise of the taxing power of the states."

The supreme court of Pennsylvania in a recent case ( *Commonwealth v. Gardner*, 19 Atl. Rep. 550), similar to the case at bar in nearly ever material fact, held that a state law, requiring a license of a peddler, though engaged in the sale of goods manufactured and owned by a citizen of another state, was not in contravention of the constitutional provision, in respect to commerce among the states, but was simply a police regulation and under the exclusive control of the state, so long as it made no discrimination against citizens of other states.   The argument used is very plausible, and would merit careful consideration, did we not put our decision on other grounds which we believe founded upon the best of reasons, supported by the highest authority, and in perfect accord with the spirit and intent of the constitution.

Holding then, as we do, that defendant was not exempt from the operation of the laws of the state regulating the license of peddlers, by reason of the goods sold being the property of a resident of another state the judgment is affirmed.   All concur.