WEST, *Appellant*, v. WEST'S ADMINISTRATOR.

1. **Curator and Ward:** WRONGFUL INVESTMENT OF WARD'S FUNDS HUSBAND AND WIFE. A curatrix married, and her husband became curator in her stead, having agreed before the marriage, for a valuable consideration, to pay what she owed her wards. She had invested some of the wards' money without any order of court and had loaned some of it to him. He died and she again became curatrix. In a proceeding by her against his estate to recover these amounts;

   *Held,* that the investment in land being unauthorized was a *devastavit,* for which he became liable by virtue of his agreement; that without such agreement he would have been liable by operation of law ; that this latter liability would have ceased with his death unless there was judgment in his lifetime, but the contract liability did not cease.

   *Held,* also, the estate was liable for the borrowed money if deceased failed to repay it, or if he repaid it before the marriage and the curatrix failed to account for it, or if he repaid it after becoming curator.

   *Held,* also, that notwithstanding her double relation to the case, plaintiff had the same right to enforce the liabilities of the estate that any other curator would have had.

2. **Deeds :** COPIES AS EVIDENCE. Copies of deeds are not generally admissible in evidence without proof of loss of the originals.

3. **Effect of Annual Settlements.** Annual settlements of administrators, curators, etc., have not, like final settlements, the force and effect of judgments, but are *prima facie* evidence only of the correctness of the account stated, and are open to collateral attack.

*Appeal from Andrew Circuit Court.*—HON. H. S. KELLEY, Judge.

REVERSED.

*Strong & Mosman* for appellant.

When West assumed and charged himself with the balance due from Mrs. Neely, he only did what the law required of him. *Allen v. McCullough,* 2 Heisk. 174; *s. c.,* 5 Am. Rep. 27; Tyler on Inf. and Cov., §§ 216, 217, 218; 2 Williams Executors, (4 Am. Ed.) pp. 1529, 1561; Schouler

Dom. Rel., 105. Nor did his liability expire with his life. 1 Parsons Contracts, (5 Ed.) 344; Tyler Inf. and Cov., §· 219; *Burton v. Burton*, 5 Harr. (Del.) 441. Having assumed the curatorship, the nature of the debt was altered, and from that time it became his own debt. *Eaton v. Walsh*, 42 Mo. 272; *Ex parte Mc Williams*, 1 Scho. & Lefr. 173; *Goss· v. Mather*, 2 Lans. 283; *Duffy v. Neale*, Taney 271.

*Wm. Heren* for respondents.

HENRY, J.—Mrs. Neely was the curator of the estate· of her minor children, and, without an order of court authorizing her to do so, invested about $2,000 of their money· in a tract of land, taking a deed to herself and holding the land in trust for said wards. In a settlement made by her· as curator, in March, 1872, she charged herself with $7,003.94, and took credit for $1,677.69, leaving a balance· against her of $5,306.22. This $7,003.94 included the amount invested in the land. Subsequently, she intermarried with Jas. West, but before said marriage, he agreed with Mrs. Neely, as she and her son testified, in consideration of a large amount of personal property owned by her, that he would pay her indebtedness to her wards. After this intermarriage, West was appointed curator of the estate of said minors, and, in his first settlement as such with the probate court, charged himself with the balance which appeared against his wife in her settlement, $5,306.25, and interest $530.62, and at the conclusion of the settlement he added the following:

" The aforesaid guardian and curator further reports that the balance remaining due said wards, there now being five remaining under age, is invested in real estate by the former guardian, and that he proposes to account for interest on the same at ten per cent per annum, and to pay each ward, when he arrives at full age, the amount then. due, all of which is respectfully submitted.

JAMES· WEST."

It seems that he had, before his marriage, borrowed of Mrs. Neely $1,000 of her wards' money, and there was evidence tending to prove that he had paid her all of that debt, except $100, and, that she then destroyed his note. The amount invested by Mrs. Neely in the land above mentioned was $2,100, and this is a proceeding against West's estate, by his widow, as curator, to recover of that estate, with other amounts, the money so invested, and other sums for which Mrs. Neely, as former curator, was liable.

· Mrs. Neely's investment of the money of her wards in real estate, was a *devastavit*. Williams on Exrs., vol. 2, p. 1529. By his intermarriage with her, James West became liable for the debts and obligations of his wife existing at the date of the marriage. Tyler on Infancy and Cov., § 216, p. 330. This liability for a debt or obligation of hers ceased at his death, if it occurred before a judgment obtained upon it, unless he assumed it as his own debt in his lifetime. Williams on Exrs., 1561; Tyler on Infancy and Cov., 335. His common law liability is a sufficient consideration for a promise to pay the wife's debt; but here, the evidence shows that he received a large amount of personal property from his wife, under an agreement made before their marriage, that in consideration of said property, he would pay her indebtedness to her wards. His written agreement attached to his first annual settlement, shows that the charge against himself of the balance of her entire indebtedness to her wards, as ascertained by her settlement, was not the result of a mistake, but was in strict compliance with an express verbal agreement, made before their intermarriage.

With regard to the $1,000, if paid to Mrs. West before her intermarriage with West, and she has not accounted for it, his estate is liable for it under the verbal promise made to her by him to pay all she owed her wards, in consideration of the property he received from her. If he

paid it to her after he qualified as curator of the children, he is of course liable, because it was then his duty to account to the estate for his said indebtedness, and he was not authorized to pay it to her. If it has never been paid or accounted for by him, his estate is liable for the amount to his successor, for it was his duty to charge himself with that amount as curator.

His written obligation to pay to the wards the money improperly invested by Mrs. Neely in the land, and his verbal agreement to pay all that she owed her wards, we think, dispose of all the subjects of controversy in this case, and fix the liability of West's estate for whatever Mrs. West was indebted to her wards, as their former curator, and such amount, if any, as may remain unpaid of West's $1,000 note to Mrs. Neely, and also whatever he may have paid of said note to Mrs. Neely before their intermarriage, or after he became curator of said estate.

If any other person than Mrs. West had succeeded her husband, as curator, the case would be free from the embarrassment which her position, as plaintiff in the suit, is calculated to produce in its investigation; but considered, as it must be, as if she were a stranger, representing in this suit, not herself but her wards, it will at once be manifest that the defense set up by defendant is not maintainable. The circuit court entertained a different opinion on these questions, and without setting out the pleadings or declarations of law made by the court, it is sufficient to say that the theory it adopted was erroneous, and a recognition of the doctrines announced herein, on a retrial, will enable the court to avoid the errors committed at the former trial.

The court also erred in admitting as evidence copies of deeds, without proof of the loss or destruction of the 2. DEEDS: copies as  originals, or other facts which the law recog-
evidence.  nizes as a foundation for the admission of such testimony.

The appellant's counsel misconceived the cases of *State*

to use of *Tourville v. Roland*, 23 Mo. 95; *Jones v. Brinker*, 3. EFFECT OF AN- 20 Mo. 87, and *Mitchell v. Williams*, 27 Mo. NUAL SETTLEMENT. 399. Whether an annual, as contradistinguished from a final, settlement of administrators, curators, etc., has the force and effect of a judgment, was not the question in those cases, but in *Picot v. Biddle*, 35 Mo. 29; *Folger v. Heidel*, 60 Mo. 284, and *Seymour v. Seymour*, 67 Mo. 303, that was the precise question passed upon, and in all of those cases it was held that an annual settlement has not the force and effect of a judgment, but is only *prima facie* evidence that such statement of the account is correct, and is open to collateral attack. The judgment is reversed and the cause remanded, to be proceeded with as herein indicated. All concur.