## THE STATE v. J. C. WEBBER, Appellant.

**Division Two, November 24, 1908.**

1. **PEDDLER'S LICENSE: Police Regulation: Uniformity.** The statute requiring a peddler to have a license is not a revenue measure, but a police regulation. It is a regulation of persons following a certain character of business, and not a tax upon property. The constitutional provisions requiring taxation to be equal and uniform, therefore, have no application to a peddler's license.

2. ———: **Constitutional Statute: Special: Exemptions of Certain Classes.** Because the statute requires itinerant vendors of certain articles, such as liniments and lemon extracts, to have a peddler's license, and does not require like vendors of other articles, such as pianos, books or agricultural instruments, to have a peddler's license, it is not unconstitutional, as a special law. If the rule is uniform as to all vendors of a particular article, the classification is not arbitrary, nor the law special.

3. ———: ———: ———: ———: **Equal Protection.** Nor does such statute deny to peddlers of the included articles the equal protection of the laws given to the vendors of the exempted articles. The power to select particular trades or occupations and subject them to a license tax, cannot be denied to the Legislature, nor the power to tax such trades according to different rules, provided the rule in regard to each business is uniform.

Appeal from Vernon Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*Warner, Dean, McLeod & Timmonds* for appellant.

The statutes under which this prosecution was had are unconstitutional and void. They make it a criminal offense for dealers in some goods, wares and merchandise to go about from place to place to sell the same without a peddler's license. In other words, peddlers who sell some goods, wares and merchandise must take out licenses; while peddlers who sell certain

other goods, wares and merchandise may do so—have the "right, privilege or immunity" to do so without license.    So that some peddlers are liable to criminal prosecutions, while other peddlers are exempt.   A statute is not within the constitutional inhibition because it is designed to operate on one class only, provided the conditions reasonably justify the distinguishing of the class, and provided it affects equally all who come within that class.    Hammon v. Central Coal Co., 156 Mo. 202; State v. Washburn, 167 Mo. 689.    But, if the attempted classification be arbitrary, or if the statute essays to confer a "right, privilege or immunity" upon one, or some, in the class and not upon all, the act is invalid.    State v. Walsh, 136 Mo. 400; State v. Thomas, 138 Mo. 95; State v. Washburn, 167 Mo. 689.    That peddlers may be distinguished as a class, we do not question; but we do contend that the Legislature cannot arbitrarily classify as peddlers those only who sell certain goods, wares and merchandise, and not deem as peddlers those who sell certain other goods, wares and merchandise.    Otherwise stated, the Legislature cannot arbitrarily separate peddlers into two unnatural classes or distinctions, and require one of such classes to take out license, while granting to the other the "right, privilege or immunity" to peddle without license—at least, no such arbitrary classification or distinction can be made as is attempted by the statute in question.    Those who deal in selling "lemon extract" or "liniment," by going about from place to place to sell the same, are peddlers; those who deal in selling pianos, organs, books, charts, maps, eggs, butter and cheese, by going about from place to place to sell the same, are also peddlers.    All being peddlers —all belonging to one class—the Legislature must treat them all alike.    No good reason is conceivable why peddlers of "lemon extracts" or "liniments" are

214 Sup.—18

more to be abhorred, feared, restricted or punished than peddlers of pianos, organs, maps, books, charts, eggs, butter or cheese. They are all peddlers, enjoying equal social, political, moral, religious and business standing. State v. Hoffman, 50 Mo. App. 585; Clements v. Town of Casper, 4 Wyo. 494; State v. Thomas, 138 Mo. 100; State v. Loomis, 115 Mo. 313; State v. Walsh, 136 Mo. 400.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

The statute was enacted for the protection of our home merchants and tradesmen, for the purpose of raising some revenue for the State, and as a police regulation. It has always been held to be a valid and reasonable exercise of the police power of the State. After a lengthy review of the authorities, in a well-considered opinion, this court held the selling of picture frames by a defendant, who went from place to place, constituted said defendant a peddler. The judgment of the circuit court, imposing a fine upon said defendant for his failure to procure a peddler's license, was affirmed. State v. Looney, 214 Mo. 216. Under the repeated decisions of our court, and under the decisions of the Federal courts, defendant's sales of medicine constituted him a peddler. State v. Emert, 103 Mo. 241; State v. Parsons, 124 Mo. 436; Parsons v. State, 166 U. S. 718; State v. Smithson, 106 Mo. 149; State v. Snoddy, 128 Mo. 523; Emert v. Missouri, 156 U. S. 296; Haynes v. Briggs, 41 Fed. 468. The Peddler's statute is constitutional, and is not subject to the criticism of appellant's counsel. By reading said statute (R. S. 1899, sec. 8861), it will be seen that it declares all persons to be peddlers who deal in all kinds of patents, all kinds of patent rights, all kinds of patent and other medicines, all kinds of lightning rods, and all kinds of merchandise, except those mentioned and farm products. Pianos, organs, sewing machines,

books, charts, maps and stationery belong to the exempted class of merchandise. The articles of merchandise, exempted by the statute, consist of articles which tend to educate and refine society. And the exemption of farm products from said statute did not render the statute in violation of the Constitution. People v. Smith, 110 N. W. 1102; People v. Sawyer, 106 Mich. 428.

GANTT, J.—On the 11th day of May, 1907, the prosecuting attorney of Vernon county filed the following information, duly verified, before Henry Dalton, a justice of the peace within and for Center township in said county:

"James N. Coil, prosecuting attorney, within and for the county of Vernon and State of Missouri, on his oath of office and on his best information and belief, informs the court that J. C. Webber, on or about the — day of May, 1907, at and in the said county of Vernon and State of Missouri, did then and there willfully and unlawfully deal in the selling of goods, wares and merchandise as a peddler, by going about from place to place with two horses and wagon used by the said J. C. Webber, for that purpose, by then and there sellings divers goods, to-wit, one bottle of liniment to one Ben Fink, for the sum of one dollar, two bottles of lemon extract to Mrs. —— Wilkerson, for the sum of fifty cents, and divers other articles to this informant unknown, to divers persons whose names are unknown, without then and there having a peddler's license, or any other legal authority therefor; contrary to the forms of the statutes in such cases made and provided, and against the peace and dignity of the State of Missouri."

A change of venue was granted to Justice Cummings, and on September 20, 1907, the defendant was put on his trial on said information and found guilty

and his punishment assessed at twenty-five dollars, and judgment rendered accordingly.

On the same day the defendant took his appeal in due form to the circuit court of Vernon county. At the October term, 1907, of the circuit court the defendant demurred to the information on the following grounds:·

1st.    Said information does not constitute facts sufficient to charge this defendant with the violation of any law, or the commission of any crime or offense.

2nd.    Sections 8861, 8862 and 8868 of the Revised Statutes 1899, under which this prosecution was instituted, are null and void; because they are in violation of section 53, article 4, of the Constitution of this State, providing that the General Assembly of this State shall not pass any local or special law granting to any corporation, association or individual any special or exclusive right, privilege or immunity.

This demurrer was overruled and thereupon afterwards, at the same term, the question coming on for hearing, a jury was waived and the question was submitted to the court upon the following statement of facts:

"On the ⸺ day of May, 1907, at Vernon county, Missouri, the defendant did deal in the selling of liniment and lemon extract by going about from place to place to sell the same and he did then and there sell one bottle of liniment to one Ben Fink, for the sum of one dollar, and two bottles of lemon extract to Mrs. Wilkerson for the sum of fifty cents, and it is also agreed that the defendant did not have any peddler's license authorizing him so to do."

At the time of submitting the question on the said statement of facts, defendant requested the court to give the following instructions:

"1.    The court declares the law to be that under

the information and evidence in this case, the court should find the defendant not guilty.

"2. The court declares that the Peddler's statutes, under which this prosecution is being had, are null and void, because in violation of section 53, article 4, of the Constitution of the State; and the defendant should be found not guilty.

"3. The court declares the Peddler's statutes, under which this prosecution is being had, are null and void because in violation of the 14th amendment to the Constitution of the United States; and the defendant should be found not guilty."

Which said instructions the court refused, and the defendant duly saved his exceptions to the action of the court in so ruling. Thereupon the court found the defendant guilty of peddling without a license as charged in the information and assessed his punishment at a fine of fifteen dollars, and rendered judgment accordingly. And thereafter on the same day the defendant filed his motion for a new trial, assigning as error the refusal of the said instructions, prayed by him, by the court. Which said motion for new trial was by the court overruled and defendant saved his exceptions. Defendant also filed his motion in arrest, assigning as grounds thereof that the information was insufficient to charge him with any crime because the statutes, to-wit, sections 8861, 8862 and 8868, Revised Statutes 1899, were null and void, because in violation of the 14th amendment to the Constitution of the United States. Which said motion was also overruled and defendant saved his exceptions. Thereafter an appeal was granted to this court in due form.

I. This appeal involves the constitutionality of sections 8861, 8862 and 8868, Revised Statutes 1899.

Section 8861 defines a peddler to be "whoever shall deal in the selling of patents, patent rights, patent or other medicine, lightning rods, goods, wares or mer-

chandise, except pianos, organs, sewing machines, books, charts, maps and stationery, agricultural and horticultural products, including milk, butter, eggs and cheese, by going from place to place to sell the same.''

It is obvious that if the statute is constitutional, the defendant was a peddler, and not having a license was guilty. The act is assailed on the ground that it is class legislation and in violation of section 53 of article 4 of the Constitution of this State which forbids special laws granting to any individual special or exclusive rights, privileges or immunities, and also in violation of the 14th amendment to the Constitution of the United States. It is conceded by the learned counsel · for defendant that it is perfectly competent for the Legislature to select peddlers as a class, which shall be required to obtain a license as a prerequisite to following that occupation. No doubt whatever exists on this point. It has been repeatedly so held by the courts of the several states and the Federal courts. The regulation of the business of itinerant peddlers is very ancient.

Baron GRAHAM, in Attorney-General v. Tongue, 12 Price 51, said: ''The object of the Legislature in passing the act upon which this information is founded was to protect on the one hand, fair traders, particularly established shopkeepers, resident permanently in towns and other places, and paying rent and taxes there for local privileges, from the mischiefs of being undersold by itinerant persons, to their injury, and on the other hand, to guard the public from the impositions practiced by such persons in the course of their dealings, who having no known residence, carry on a trade by means of vending goods conveyed from place to place by horse or cart.'' [Graffty v. Rushville, 107 Ind. 502; City of South Bend v. Martin, 142 Ind. 31; 21 Am. and Eng. Ency. Law (2 Ed.), 791.] But it is insisted that section 8861 has arbitrarily divided this

natural class and requires one of such classes to take out a license, and at the same time grants the other the "right, privilege or immunity" to peddle without a license. That is to say, the Legislature cannot exempt those who deal in selling pianos, organs, books, charts, maps, eggs, butter and cheese from taking out a license, and by the same statute, require those who peddle other merchandise, as in this case, "extracts and liniments," to obtain a license. That this is class legislation. It is the settled doctrine of this court that before an act of the Legislature will be held unconstitutional it must appear beyond reasonable doubt that it is in contravention of the Constitution. This assault upon the peddler's license is not new.

It must be borne in mind that this is not a revenue measure, but is a police regulation. It is regulation of persons following a certain character of business, and not a tax upon property.

In Seymour v. State, 51 Ala. 52, the Peddler's Act of that State was resisted on the ground that the exemption of manufacturers and makers to peddle their products was void because an unlawful discrimination between the same general class, but the Supreme Court of that State held that the State had the right to make such exemption without infringing upon the Constitution. That the privileges and immunities were the same. That every peddler who paid any license at all, paid the same. In Hays v. Commonwealth, 55 S. W. 425, a like contention was made and it was urged that because certain articles were allowed to be peddled without a license, the act violated the 14th amendment to the Federal Constitution but the Court of Appeals rejected that contention, saying: "It is true certain articles of property are allowed to be sold by itinerant persons without a license, and they can be sold by any and every person, either as an itinerant or otherwise. Therefore, there is no discrimination. Moreover, all

citizens, if they elect to peddle the prohibited goods, must have a license to do so; otherwise, they are subjected to punishment. Hence there is absolutely no discrimination between citizens, each and every one standing on an exact equality under the peddler's law. If the fact that a man may sell stoneware without a license renders the whole peddler's law unconstitutional, it necessarily follows that the statute requiring a license to sell alcoholic liquors is in violation of the same provision of the Constitution, because the citzen may sell various other articles, both liquid and solid, without any license; and the right of both the State and Federal governments to require license of venders of alcoholic liquors has always been sustained by the courts of last resort, both Federal and State, so far as we are advised.''

So in People v. DeBlaay, 137 Mich. 402, an act of the Legislature of that State prohibited peddling without a license, but made an exception in favor of wholesale merchants selling by sample, and manufacturers, farmers, mechanics and nurserymen selling their own products, and this exception or exemption was challenged on the ground that it constituted class legislation. But the Supreme Court of that State ruled that this could not be called class legislation in such a sense as to deny any citizen an equal protection of the law. Under this provision all persons in the same class were treated alike under like circumstances and conditions. Similar provisions having been sustained by that court in People v. Sawyer, 106 Mich. 428, a like ruling was made in People v. Smith, 110 N. W. 1102, the court saying in this last case, ''The defendant's first contention, which is that because the ordinance in terms excepts persons selling vegetables, fish, meat, or farm produce, and bakers who deliver bread and pastry to customers, from its provisions, it is therefore invalid,

is ruled against him by People v. Sawyer, 106 Mich. 428, and People v. Baker, 115 Mich. 199.''

In State v. Montgomery, 43 Atl. 16, it was said by the court: "It is contended that the exception which permits one to peddle without a license 'the products of his own labor, or the labor of his family, any patent of his own invention, or in which he has become interested by being a member of any firm, or stockholder in any corporation which has purchased the patent,' is a discrimination in favor of some and against others. We do not think so. If one may peddle freely the products of his own labor, so may all. The products may be unlike, but the freedom to prosecute one's own business and to peddle his own products is free alike to all. So of the other exceptions. While it may happen that various producers may peddle each the product of his own labor without license, but not of the labor of another, still we think this fairly answers the requirements of uniformity. The Legislature is the sole judge of the extent to which the business of peddling should be regulated, and its conclusions are final, so long as the burdens imposed do not bear unevenly upon citizens.''

In State v. Stevenson, 109 N. C. 730, a license tax upon merchants was upheld, although it exempted purchasers of farm products from the producer. The court after observing that the law puts all merchants dealing in farm products purchased of the producer in one class and all other merchants in another class and treats all in each class alike, goes on to say: "There is no discrimination in either class. The power to select particular trades or occupations and subject them to a license tax cannot be denied to the Legislature, nor the power to tax such trades according to different rules, provided the rule in regard to each business is uniform.''

In Levy v. State, 161 Ind. 251, the constitution-

ality of an act of that State prohibiting the transaction of business by any transient merchant without a license was held not to deny the transient merchant the equal protection of the laws in violation of the amendment of the United States Constitution. The Supreme Court of that State in an exhaustive opinion considered all the objections to the constitutionality of the act, and held that it granted no special privilege and immunities, but applied to all transient merchants and was a natural and reasonable classification, and held that the occupation of a transient merchant closely resembles that of hawkers and peddlers, and sustained the law as a proper exercise of the police power of the State.

In People v. Sawyer, 106 Mich. 428, a municipal ordinance was attacked on the ground of illegal discrimination, because it exempted mechanics and farmers selling their own manufactures and products, but it was held that it was competent to make these exceptions, the court saying, "The discrimination in favor of mechanics and farmers in the sale of their products is within the power conferred by the charter upon the common council. These immunities have been recognized for many years. By the statute, 50 Geo. III, ch. 41, sec. 23, real workers or makers of goods within Great Britain were exempt from the payment of the license fee which was imposed upon hawkers and peddlers. [Rex v. Faraday, 1 B. & Ad. 275; Rex v. Mainwaring, 10 B. & C. 66.]"

The Peddler's Act of this State has been on our statute book for many years. In Welton v. State, 91 U. S. 275, the Supreme Court of the United States held the provision of the statute which discriminated in favor of articles, the growth and product of this State, was a violation of the Federal Constitution which forbids a State without the consent of Congress from laying any impost or duty on imports or exports and

with the power in Congress to regulate commerce among the several states. But with this exception, the constitutionality of the act has never been questioned. After the decision in Welton v. State, supra, the statute was amended so as to eliminate the feature of discrimination against the products of other states, and the decision of this court upon the statute as amended, in State v. Emert, 103 Mo. 241, was affirmed in 156 U. S. 296, and the judgment in State v. Parsons, 124 Mo. 436, was affirmed in 166 U. S. 718.

In the recent case of St. Louis v. Meyer, 185 Mo. 583, it was held that a farmer selling the products of his own farm was not a peddler under the Peddler's Act of this State, and the necessary effect of the ruling was and is to sustain the exception of those who peddle their own agricultural and horticultural products.

When we consider the underlying consideration which moved the Legislature to pass our Peddler's Act and that it is a police regulation for the protection of our people, we think it was competent for the Legislature to distinguish between itinerant venders of the exempted articles on the one hand and to require safeguards against peddlers of goods and wares not exempted on the other, in view of the mischiefs which it was sought to guard against.

We think the decided weight of authority is in favor of the constitutionality of such exemptions.

As already said, the provision of our Constitution requiring taxation to be equal and uniform on all property within the territorial limits of the authority levying the tax has no application to the case before us. This act imposes no tax on property, but only requires a license to be paid by persons who peddle certain articles. We think the statute can be justified on many grounds, and it was the right of the Legislature to enact it as a police regulation, and we can discover no such arbitrary inequality in it as to justify

this, court in holding it unconstitutional on any of the grounds urged against it.

The judgment is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.